Lottie Bishop, as personal representative of the estate of Patricia B. Hambright, deceased, appeals from a summary judgment in favor of Chilton County ("the County") in Bishop's wrongful-death action against the County. We reverse and remand.
According to the undisputed facts, Patricia B. Hambright was killed on September 22, 2005, when the automobile she was operating was struck by another automobile at an intersection in Chilton County. On April 24, 2006, letters of administration of Hambright's estate were issued to Bishop. On October 26, 2006, Bishop mailed to the Chilton County Commission a letter and "affidavit of claim," asserting that Hambright was "killed by another automobile *Page 288 
due, in part, to the County's failure to properly maintain the caution light and keep the grass cut in the right of way and/or shoulder." She "demand[ed] payment . . . in an amount of no less than $100,000." On November 28, 2006, Bishop sued the County and the operator of the vehicle that struck Hambright's vehicle, reasserting against the County allegations of the affidavit. In a wrongful-death count, she sought from the County "punitive damages in an amount to be determined by the jury."
On December 18, 2006, the County answered the complaint and asserted, as its second defense, that Bishop "failed to file anante litem notice of claim with the Chilton County Commission within twelve (12) months of the accrual of the claim alleged in the complaint . . . as required by [Ala. Code 1975,] §§ 6-5-20, 11-12-5, and 11-12-8." On December 21, 2006, the County moved for a summary judgment on the sole ground asserted as its second defense. Specifically, the County argued that the "[f]ailure of a prospective tort claimant to file a pre-suit claim within the twelve-month period contained in § 11-12" 8 bars any later lawsuit arising out of the same facts."[1]
According to § 11-12-8, "[a]ll claims against counties must be presented for allowance within 12 months after the time theyaccrue or become payable or the same are barred. . . ." (Emphasis added.) The County contended that, because the notice of a claim was not given within 12 months of theaccident, the claim was barred by § 11-12-8. In her response to the County's motion, Bishop argued that, for the purposes of § 11-12-8, "a wrongful-death cause of action accrues at the time the personal representative isappointed, rather than the date of death." (Emphasis in original.)
The trial court entered a summary judgment for the County and certified the judgment as final pursuant to Ala. R. Civ. P. 54(b). From that judgment, Bishop appealed.
On appeal, Bishop contends that her complaint was timely filed because it was filed within one year of the issuance to her of letters of administration of Hambright's estate. For that proposition, she cites Buck v. City of Rainsville,572 So.2d 419 (Ala. 1990). In Buck, this Court considered the timeliness of a wrongful-death claim against amunicipality within the context of Ala. Code 1975, § 11-47-23, which provides, in pertinent part: "Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred." (Emphasis added.) The Court held "that — in regard to actions that must be brought by a personal representative — for the purposes of § 11-47-23, a wrongfuldeath cause of action accrues at the time the personalrepresentative is appointed." 572 So.2d at 423 (emphasis added). This was so, because, the Court explained, "[a] cause of action `accrues' when the party in whose favor it arises is entitled to maintain an action on it," id., and "an individual cannot maintain a wrongful death action unless he has been appointed personal representative of the estate of the deceased whose death is the basis of the wrongful death action." 572 So. Sd at 422.
The County concedes that Buck correctly states the law regarding the filing of a wrongful-death action against amunicipality. However, it contends that § 11" 12-8 "provides a broader defense to counties with regard to the time-filing requirements of pre-suit notices of claim than § 11-47-23 does to municipalities." The *Page 289 
County's brief, at 10-11 (emphasis added). This is so, because, the County argues, § 11-12-8 contains a phrasenot found in § 11-47-23, which broadens its scope, namely, the phrase "or become payable." According to the County, this phrase necessitates a result here different from the one in Buck.
Our standard of review is de novo. That is the standard by which we review the trial court's grant or denial of a summary-judgment motion, as well as the standard by which we review questions of law regarding statutory construction.Pinigis v. Regions Bank, 977 So.2d 446, 449
(Ala. 2007); Smith v. State Farm Mut. Auto. Ins. Co.,952 So.2d 342, 346 (Ala. 2006). This appeal presents a single question, purely legal in nature, namely, whether the phrase in § 11-12-8 "or become payable" controls the timing of claims against a county arising under the Alabama Wrongful Death Act, Ala. Code 1975, § 6-5-410. We hold that it does not.
Bishop contends that the phrase "become payable" does not apply to wrongful-death claims. She argues that a wrongful-death claim "accrues," as that term is used, both in § 11-12-8
and in § 11-47-23, when letters of administration are issued. Moreover, according to Bishop, until she was appointed as personal representative of Hambright's estate, no oneexisted to whom payment of a claim could be made. Thus, she insists, the ante litem aspect of § 11-12-8
differs in no relevant respect from that in § 11-47-23, insofar as the sections apply to wrongful-death actions.
As the sole basis for its argument for a different result under § 11-12-8, the County insists that liability on awrongful-death claim becomes "fixed" against a county andimmediately "payable" by the county at the moment ofdeath. This assertion is repeated throughout the County's brief. See the County's brief, at 12 ("A wrongful death claim `becomes payable' against the county immediately upon the death of a decedent in circumstances where a county is chargeable with liability because it is then that the liability of thecounty becomes fixed "); at 22 ("a wrongful death claim against a county `become[s] payable' immediately upon the death of the decedent (assuming that a factual basis for liability against the county exists)" (emphasis in original)); at 23-24 ("Because of this difference in wording between the municipal and the county nonclaim statute — with the county statute focusing upon when the liability of thecounty becomes fixed, rather than when the claimant acquires the capacity to make the claim — a pre-suit notice of claim against a county in a wrongful death action must be filed within 12 months of the death of the decedent, or else it is extinguished"); at 27 ("in cases involving wrongful death claims, the time period provided for in § 11-12-8
commences to run from the time the liability of the countybecomes fixed"); at 28 ("the Legislature logically provided for the time period in § 11-12-8 to commencewhen the liability against the county first becomesfixed"); and at 28 ("the time period for the filing of a notice of [a] claim against a county begins to run at thetime that the liability is fixed") (emphasis added except where otherwise noted). We agree with the County that the phrase "become payable" refers to fixed liabilities. However, we disagree that a wrongful-death claim that has not been reduced to a judgment or a settlement is a fixed liability.
The term "fixed liabilities" applies to liabilities that are "certain and definite as to both obligation and amount;e.g. interest on bonds or mortgage." Black's LawDictionary 638 (6th ed. 1990) (emphasis added). To "fix" means, among other things, "[t]o liquidate or render certain." Id. at 637 (emphasis added).
 "`A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with *Page 290 
exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate.'"
Janelle Mims Marsh and Charles W. Gamble, Alabama Law ofDamages § 8:7 (5th ed. 2004) (emphasis added) (quoting Charles Tilford McCormick, Handbook on the Law ofDamages § 54 (1935)). "`However, damages are notliquidated if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment.'" Morales Sand Soil, L.L.C.v. Kendall Props. Invs., 923 So.2d 1229, 1232 (Fla. Dist.Ct.App. 2006) (emphasis added) (quoting Bowman v.Kingsland Dev., Inc., 432 So.2d 660, 663
(Fla.Dist.Ct.App. 1983)).
"A claim for damages arising out of a personal injury isunliquidated in the sense that the defendant cannot know, prior to judgment, the precise amount he or she is going to be required to pay." 3 Jacob A. Stein, Stein on PersonalInjury Damages § 17:60 (3d ed. 1997) (emphasis added). Personal-injury claims "`by their very nature are not fixed until [a] juridical award to fix liability and amount.'"Sylvester v. Dow Jones Co. (In re Sylvester), 19 Bankr.671, 673 (9th Cir. 1982) (quoting Denham v. ShellmanGrain Elevator, Inc., 444 F.2d 1376, 1380 (5th Cir. 1971)).
Punitive damages are inherently unliquidated.Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974);Emarine v. Haley, 892 P.2d 343, 350
(Colo.Ct.App. 1994). This is so, because an "award of punitive damages is within the sound discretion of the jury, considering all attendant circumstances. . . . The jury's award is to punish the wrongdoer based upon the enormity of the wrong to the plaintiff, as well as the necessity to prevent similar wrongs from being committed in the future." Roberson v.Amnions, 477 So.2d 957, 961 (Ala. 1985). Thus, a claim brought under the Alabama Wrongful Death Act, § 6-5-410, Ala. Code 1975, where the damages are entirelypunitive, "imposed for the preservation of human life,"Eich v. Town of Gulf Shores, 293 Ala. 95, 98,300 So.2d 354, 356 (1974), and not for the purpose of compensation,McKowan v. Bentley, 773 So.2d 990, 998 (Ala. 1999), is the paradigmatic unliquidated claim.
In short, we agree with Bishop that a claim does not "become payable" until a party exists to whom payment can legally and effectively be made. If an individual has no authority tobring a wrongful-death claim until she "has been appointed personal representative of the estate of the deceased," Buck, 572 So.2d at 422, then clearly she has no authority to receive payment on a claim she had no authority to bring. Also, we disagree with the County that a wrongful-death claim becomes "fixed," either as to liability or amount, at the time of the decedent's death. Thus, the antelitem term in § 11-12-8 applicable to wrongful-death claims is "accrue," and, informed by Buck we hold that a wrongful-death claim against a county accrues upon the appointment of a personal representative of the decedent's estate. Because the notice of claim in this case was filed within one year of Bishop's appointment as personal representative, her claim against the County was timely. The summary judgment in favor of the County is, therefore, reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
COBB, C.J., and SEE, SMITH, and PARKER, JJ., concur.
[1] The County raises no issue regarding Bishop's compliance with § 6-5-20 or § 11-12-5. *Page 291