23 So.3d 625 (2009)
Sheila HENDERSON, as personal representative of the estate of Tony R. Henderson, deceased
v.
MEADWESTVACO CORPORATION and CSX Transportation, Inc.
CSX Transportation, Inc.
v.
Sheila Henderson, as personal representative of the estate of Tony R. Henderson, deceased
MeadWestvaco Corporation
v.
Sheila Henderson, as personal representative of the estate of Tony R. Henderson, deceased.
1070522 and 1070497 and 1070509.
Supreme Court of Alabama.
March 20, 2009.
Rehearing Denied in No. 1070522 May 15, 2009.
*626 John E. Guerry III of Motley Rice LLC, Mt. Pleasant, South Carolina; and Charles E. Robinson, Jr., of The Robinson Law Firm, PC, Ashville, for appellant/cross-appellee Sheila Henderson, as personal representative of the estate of Tony R. Henderson, deceased.
Randall A. Jordan of The Jordan Firm, St. Simons Island, Georgia; and Todd M. Higey of RicharsonClement PC, Birmingham, for appellee-cross/appellant CSX Transportation, Inc.
H. Thomas Wells, Jr., John A. Smyth III, and E. Bryan Nichols of Maynard, Cooper & Gale, P.C., Birmingham, for appellee/cross-appellant MeadWestvaco Corporation.
Michael D. Freeman, R. Bruce Barze, Jr., and Spencer M. Taylor of Balch & Bingham LLP, Birmingham, for amicus curiae Business Council of Alabama, in support of the appellees/cross-appellants MeadWestvaco Corporation and CSX Transportation, Inc.
Crawford S. McGivaren, Jr., of Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP, Birmingham, for amicus curiae Association of American Railroads, in support of the appellee/cross-appellant CSX Transportation, Inc.
David G. Wirtes, Jr., of Cunningham Bounds LLC, Mobile, for amicus curiae Alabama Association for Justice, in support of the appellant/cross-appellee Sheila Henderson, as personal representative of the estate of Tony R. Henderson, deceased.
LYONS, Justice.
Sheila Henderson, as personal representative of the estate of Tony R. Henderson, deceased, appeals from a summary judgment in favor of CSX Transportation, Inc. ("CSX"), and MeadWestvaco Corporation ("MeadWestvaco") on her claim seeking damages for the alleged wrongful death of her husband, Tony R. Henderson. CSX and MeadWestvaco both filed cross-appeals.[1] We affirm the summary judgment, *627 albeit on a rationale different from that relied upon by the trial court.

I. Facts and Procedural History

Tony R. Henderson was diagnosed with mesothelioma in 2004. Mesothelioma is a cancer of the lining of the lungs and of the heart; it is caused, almost exclusively, by the inhalation of asbestos fibers. The evidence shows that Henderson was exposed to asbestos as a teenager when he worked for the Cement Asbestos Products Company ("CAPCO"). CAPCO manufactured pipe from cement, silica, and asbestos at a plant in St. Clair County near Henderson's family home. CAPCO closed the plant in 1984.
Henderson worked for CAPCO part-time during high school in the late 1960s preparing pallets for reuse. He also worked for CAPCO full-time during the summers of 1971 and 1972 while he was in college. Henderson's primary duty in 1971 and 1972 was to unload from railroad cars operated by Seaboard Coastline, a predecessor of CSX, packages of raw asbestos fibers that were delivered to the plant. Henderson was directly exposed to asbestos when he unloaded the railcars. Henderson testified during his deposition that he was never provided, and he never wore, any mask or other respiratory protection when he worked for CAPCO. Henderson testified that he was never warned of the dangers of exposure to asbestos.
It is undisputed that Henderson first developed symptoms of mesothelioma, a cough and fluid on his lungs, in September 200432 years after his last exposure to asbestos at CAPCO. Henderson was diagnosed with mesothelioma in mid-October, 2004. He died as a result of the disease on February 1, 2006.
In March 2005, Tony Henderson and his wife Sheila filed a personal-injury action against CSX, Bill Vann Company, Inc.,[2] and several other entities in the State Court of Fulton County, Georgia ("the Georgia action"), seeking damages for injury resulting from exposure to asbestos. Tony Henderson died while the Georgia action was pending. Sheila Henderson, in her capacity as personal representative of Tony's estate, voluntarily dismissed the Georgia action on June 16, 2006. On the same day she dismissed the Georgia action, Sheila Henderson, in her capacity as personal representative of Tony's estate, filed an independent action in the St. Clair Circuit Court against CSX, Bill Vann Company, Inc., MeadWestvaco, and several fictitiously named defendants.[3] Pursuant to § 6-5-410, Ala.Code 1975, Sheila Henderson's complaint stated a single count seeking recovery for Tony Henderson's alleged wrongful death. No parties were ever substituted for the fictitiously named defendants.
Henderson contends that CSX is responsible for her husband's death because, she says, it failed to warn him of the dangers of the asbestos it delivered to CAPCO and because, she says, it failed to train him in how to safely unload asbestos from the railcars.[4] Regarding MeadWestvaco, *628 Henderson contends that the company's predecessor, the Mead Corporation and/or its predecessor, the Woodward Corporation, owned CAPCO during the time of her husband's employment there and that it voluntarily assumed a duty to inspect the CAPCO plant and to ensure compliance with safety standards.[5]
MeadWestvaco removed the action to the United States District Court for the Northern District of Alabama in July 2006, and the case was remanded to the St. Clair Circuit Court in August 2006. After remand, CSX and MeadWestvaco each moved for a summary judgment on several grounds, including the statute of limitations of § 6-5-410 and the rule of repose. CSX also argued that it did not owe a duty to Tony Henderson, and MeadWestvaco argued that its predecessors were merely shareholders of CAPCO and that, therefore, it is not subject to liability for Tony Henderson's alleged wrongful death. On July 3, 2007, the trial court denied the motions as to the statute of limitations, CSX's duty, and MeadWestvaco's relationship with CAPCO. The trial court, however, entered a summary judgment in favor of CSX and MeadWestvaco, finding that the rule of repose barred Henderson's claim. After her postjudgment motion was denied and the trial court had entered a summary judgment as to the last remaining defendant, Bill Vann Company, Inc., Henderson filed a timely appeal to this Court.[6]

II. Standard of Review

"`The standard of review applicable to a summary judgment is the same as the standard for granting the motion....' McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
"`A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact"evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'

*629 "Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004)."
Alabama Elec. Coop. v. Bailey's Constr. Co., 950 So.2d 280, 283 (Ala.2006).

III. Analysis

"A wrongful death action is purely statutory; no such action existed at common law." Waters v. Hipp, 600 So.2d 981, 982 (Ala.1992). Alabama's wrongful-death statute, § 6-5-410(a), Ala.Code 1975, states:
"A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death."
"Title 7, § 123 [Ala.Code 1940, the predecessor to § 6-5-410(a), Ala.Code 1975,] creates a distinct cause of action which comes into being only upon death from wrongful act." Ivey v. Wiggins, 276 Ala. 106, 108, 159 So.2d 618, 619 (1964). That action arises in favor of the decedent's personal representative, in this case, Sheila Henderson. Id. However, the action is not unlimited. Among other things, "[t]he plain language of the wrongful death statute states that the personal representative may commence a wrongful death action, `provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death.'" Curtis v. Quality Floors, Inc., 653 So.2d 963, 964 (Ala.1995) (emphasis added). Applying this proviso to the circumstances of this case, we conclude that Sheila Henderson's claim is barred by her inability to satisfy the requirement of the proviso that "the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death," and the trial court's summary judgment for CSX and Mead-Westvaco should be affirmed on that basis.
The proviso of § 6-5-410(a) requires consideration of whether the decedent, had he or she lived, would have been able to file a personal-injury action for the injuries that caused his or her death. "Our cases hold that if a decedent's cause of action is time-barred at his or her death, then the decedent's personal representative cannot bring a wrongful death action." Curtis, 653 So.2d at 964 (emphasis added) (citing Northington v. Carey-Canada, Inc., 432 So.2d 1231 (Ala.1983) (affirming a summary judgment based on Tyson v. Johns-Manville Sales Corp., 399 So.2d 263 (Ala.1981); Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979); and Ellis v. Black Diamond Coal Mining Co., 268 Ala. 576, 109 So.2d 699 (1959))). However, the proviso is silent as to whether another, and if so what, state's statute of limitation applies to the determination of whether the decedent's personal-injury action would have been time-barred at the date of the decedent's death, had the decedent not died on that date.
Sheila Henderson commenced her action in the St. Clair Circuit Court on June 16, 2006, based on Tony Henderson's alleged wrongful death. On appeal, for good reason, she does not contend that Tony Henderson could have commenced a personal-injury action under Alabama's statute of limitations. In Tyson v. Johns-Manville Sales Corp., supra, this Court explained:

*630 "Until May 18, 1980, § 6-2-30 of the Alabama Code of 1975, and Garrett v. Raytheon, 368 So.2d 516 (Ala.1979), dictated the limitations period and date of accrual of causes of actions for injury due to radiation and other insidious agents.
"Under §§ 6-2-30 and 6-2-39 of the Alabama Code of 1975 [as they existed at that time], all actions for injury to the person not arising from contract must be commenced within one year after the cause of action has accrued. In Garrett v. Raytheon, supra, the Court held that a cause of action for radiation injury accrued and `the statute of limitations of one year began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered.' 368 So.2d at 521. Asbestos injury, like radiation injury, results from a latent, insidious agent and, prior to the passage of Act No. 80-566 [an amendment to § 6-2-30 that applied a discovery rule to the accrual of causes of action arising from exposure to asbestos] and Act No. 79-468, Alabama Acts of 1979 [adding § 6-5-500 et seq., Ala.Code 1975], following Raytheon, a claim based on asbestos injury would have accrued on the last date of plaintiff's exposure to defendant's product."
399 So.2d at 268 (footnote omitted). In Tyson, this Court held that "if, before the effective date of Act No. 80-566, [May 19, 1980,] one year had elapsed between the date of plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations." 399 So.2d at 267. In determining whether the discovery statute applied retroactively, this Court concluded: "Once an action is barred by a statute of limitations in existence at the time of commencement of the action, rights vest in the limitations defense which cannot be destroyed by subsequent legislative act because § 95 of the [Alabama] Constitution restricts the legislative power to do so." 399 So.2d at 270.
As explained in Tyson, based on the law as it then existed, Tony Henderson's claim of personal injury resulting from exposure to asbestos would have accrued in 1972, on the date of his last exposure to asbestos at CAPCO. Based on the one-year statute of limitations applicable to personal injury claims at the time of the accrual of Tony Henderson's claim, his claim was time-barred in 1973. Accordingly, at the time of his death, Tony Henderson could not, under Alabama law, "have commenced an action for such wrongful act, omission, or negligence if it had not caused death." § 6-5-410(a).
To support her argument that, in applying the proviso of § 6-5-410(a), this Court disregard Alabama's conflicts-of-law rule that the procedural law of the forum must be applied, Sheila Henderson relies on this Court's decisions in Pace v. Armstrong World Industries, Inc., 578 So.2d 281 (Ala.1991), and Textron, Inc. v. Whitfield, 380 So.2d 259 (Ala.1979). In Pace, this Court answered a certified question from the United States District Court for the Southern District of Alabama. That court presented the following facts. Joseph Pace was allegedly last exposed to asbestos at his place of employment in 1966. He was diagnosed with chronic obstructive lung disease in 1985 and in 1986 sued in the United States District Court for the Northern District of Texas to recover for his injuries. The action was transferred to the United States District Court for the Southern District of Alabama ("the Southern District") pursuant to 28 U.S.C. § 1404(a). Alabama substantive *631 law applied to Pace's personal-injury claim. 578 So.2d at 282. However, pursuant to the United States Supreme Court's decisions in Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), and Klaxon Co. v. Stentor Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), "`the Texas statute of limitations governed Pace's personal injury claim, as a matter of procedural law, and... the claim was timely filed.'" 578 So.2d at 282 (quoting certificate filed by the Southern District). Accordingly, the action was governed by Texas procedural law and Alabama substantive law.
Pace died in 1988 while his personal-injury claim was pending before the Southern District. His personal representative, Henry Pace, filed an amended complaint in the action, seeking to recover for Pace's alleged wrongful death. Henry Pace did not file an independent action. The defendants moved to dismiss the amended complaint on the ground that it was time-barred by Alabama's wrongful-death statute.
In response to the motion to dismiss, Henry Pace contended that Alabama's wrongful-death statute did not "`require the underlying personal injury action to be available in Alabama'" and did not "`require that the [decedent] must have been able to commence such an action in Alabama.'" 578 So.2d at 282-83 (quoting certificate filed by the Southern District). Henry Pace also contended that a decedent's "`personal representative may convert [an existing, timely, personal-injury action in a foreign court] to a wrongful death action.'" 578 So.2d at 283 (emphasis added). This Court consented to answer the following question presented by the Southern District:
"`Whether the inability of the decedent to [commence] a personal injury action in the State of Alabama prior to the time of death precludes amendment of his existing personal injury action by the decedent's representative so as to bring an action for wrongful death under Ala.Code 1975, § 6-5-410?'"
578 So.2d at 283. Accordingly, this Court consented to address the issue raised by Henry Pace's second contention.
After discussing the history of the wrongful-death statute and the applicable rules of statutory construction, this Court stated:
"We find the extent of the restrictive scope of the proviso to be in doubt. The facts of this casethe application of the substantive law of Alabama and the procedural law of Texasfrom all appearances, was not in the mind of the legislature at the time of the enactment of the statute. Section 6-5-410 does not address the eventuality that underlying personal injury actions would be commenced outside the State of Alabama. Indeed, the defendants' historical analysis of § 6-5-410 supports this statement. Because we find the restrictive scope of the proviso to be in doubt, we must strictly construe its restrictive scope. Sutherland [Statutory Construction § 47.08 (4th ed.)]. We must also adhere to the rule on omitted words, which compels this Court to proceed with caution in supplying omitted words and to supply them only where the omission is palpable. 73 Am.Jur.2d [Statutes § 203 (1974)]. Applying a strict construction to the language of the proviso, we will restrict from the operation of § 6-5-410 only those actions that are expressly restricted; and, there can be no doubt that the proviso does not expressly preclude a personal representative from commencing an action in Alabama where the decedent had timely commenced a personal injury action for the same wrongful act or omission that caused the *632 decedent's death. We also find that the legislature's omission of words that would mandate that the decedent must have been able to commence a personal injury action in Alabama is not palpable, and we conclude, therefore, that this Court should not, by construction, insert into the statute words that would have that effect."
578 So.2d at 285. Based on this reasoning, and in response to the certified question, this Court held: "[T]he decedent's inability to commence a personal injury action in Alabama had death not occurred does not preclude his personal representative from converting his existing personal injury action filed in Texas[, and subject to Texas procedural law,] into a wrongful death action under Ala.Code 1975, § 6-5-410." 578 So.2d at 286 (bracketed language and emphasis added).
Henderson argues that this Court's decision in Pace stands for the proposition that any personal-injury action filed outside Alabama by the decedent before death satisfies the proviso of § 6-5-410 with respect to a personal representative's action in Alabama initially filed under the wrongful-death act. Were we to accept this argument, Alabama's conflicts-of-law rulei.e., that the procedural rules of the forum applywould not apply to the personal-injury action contemplated by the proviso in § 6-5-410, and the proviso would be satisfied so long as the decedent could have filed a personal-injury action in another forum at the time of his death. Under the construction of Pace and the proviso suggested by Henderson, the proviso would have a limited field of operation. Cf. Simcala, Inc. v. American Coal Trade, Inc., 821 So.2d 197, 200-01 (Ala.2001). We cannot agree with an application of § 6-5-410 that would so limit the proviso and remove it from operation of our traditional conflicts-of-law rules.
Just as this Court concluded in Pace that the legislature did not anticipate a scenario triggered by the peculiarities of the interplay between state and federal law by reason of 28 U.S.C. § 1404(a), see Pace, supra, so we conclude that it was equally beyond the legislature's contemplation that a personal representative, commencing an action in Alabama based on alleged wrongful death, could avoid Alabama's conflicts-of-law rules and apply more favorable procedural rules of some other jurisdiction to meet the requirements of the proviso. Indeed, this view is reenforced by recognition of the legislature's attempt to restrict the availability of § 6-5-410 to "a court of competent jurisdiction within the State of Alabama, and not elsewhere."[7] (Emphasis added.) Accordingly, we confine our reading of Pace to the facts presented, specifically, to those circumstances in which the substantive law of Alabama and the procedural law of another state apply and under which procedural rules the decedent's personal-injury claim is viable. This reading is consistent with Riddle v. Shell Oil Co., 764 F.Supp. 418 (W.D.Va.1990),[8] which this Court cited *633 to support its conclusion in Pace. We decline to extend the holding in Pacethat this Court could not interlineate the phrase "in Alabama" so as to require that the decedent must have been able to commence a personal-injury action in Alabamabeyond the context of the setting there presented, i.e., where the forum was obliged to apply the statute of limitations of another jurisdiction under governing principles of conflicts of laws.
Henderson also relies on this Court's decision in Textron, Inc. v. Whitfield, supra. In that case, Hubert Whitfield filed a personal-injury claim in the Jefferson Circuit Court under the Alabama Uniform Commercial Code. Whitfield subsequently filed an action in the United States District Court of Vermont stating the same cause of action. The defendant in the Alabama action moved to dismiss Whitfield's claim on the ground that it was barred by the applicable statute of limitations. The trial court granted that motion, but it did not specify whether the dismissal was with or without prejudice. The defendant in the Vermont action then moved for a summary judgment on the ground that Whitfield's claim was barred by the doctrine of res judicata. While that motion was pending, Whitfield filed what this Court characterized as a motion under Rule 60(b), Ala. R. Civ. P., asking the Alabama court to amend its judgment to state that the dismissal was "without prejudice." The Alabama trial court granted Whitfield's motion, and the defendant appealed.
This Court ruled that the Alabama trial court did not exceed its discretion in granting Whitfield's Rule 60(b) motion. This Court then addressed the res judicata question that was at issue before the Vermont court, noting that the disposition of the Alabama action based on the statute of limitations was procedural and therefore did not have a preclusive effect on the Vermont action. This Court stated: "We are of the opinion that if the plaintiff can present his claim elsewhere, in a jurisdiction which has a longer or different statute of limitations, and prevail on the merits of his claim, he should have that opportunity." 380 So.2d at 260.
Henderson argues that this statement in Textron was an invitation by this Court for plaintiffs to file personal-injury actions in jurisdictions with more favorable statutes of limitation, and, thus, she argued, the Georgia action satisfies the proviso of § 6-5-410. As an initial matter, we note that Textron involved a personal-injury action, not a wrongful-death action; it did not implicate the proviso of § 6-5-410. Furthermore, this Court made clear in Textron that the conflicts-of-law rules of the forum would apply to any action filed in a sister jurisdiction, so that the procedural rules of that jurisdiction would determine whether the plaintiff's personal-injury action was viable. Textron condoned nothing more than the right to pursue in another jurisdiction a claim that would be viable under the statute of limitations applicable in that jurisdiction under such jurisdiction's conflicts-of-law rule.
Consistent with Textron, the Georgia conflicts-of-law rules and thus the procedural rules of Georgia applied to determine the timeliness of the Hendersons' previously filed personal-injury action in Georgia. However, Henderson voluntarily dismissed that action. She did not choose to amend it, as did the plaintiff in Pace, to assert a wrongful-death claim.[9] Instead, *634 she filed an independent action in Alabama. Accordingly, under the doctrine of lex fori, the law of this forum applies to the determination required by the proviso of § 6-5-410.
The legislature could have specified the application of a rule other than the common-law rule of lex fori for determining the result of the inquiry called for by the proviso of § 6-5-410. Likewise, it could have specified a particular state's statute of limitations be considered in determining whether a decedent could have commenced an action. However, the legislature did neither. See Housing Auth. of Huntsville v. Hartford Accident & Indem. Co., 954 So.2d 577, 582 (Ala.2006) ("The common-law doctrine allowing a surety to assert all defenses available to its principal was in existence when § 6-5-221 was enacted. The legislature could have expressly limited that doctrine if it desired to do so, but it chose not to."). As previously noted, the initial, albeit unsuccessful, legislative choice was to confine the remedy to Alabama courts. Faced with the legislature's silence on this issue, we apply traditional conflicts-of-law rules and the doctrine of lex fori to the inquiry required by the proviso, i.e., whether Tony Henderson could have commenced a personal-injury action based on mesothelioma had it not caused his death.
In light of the legislature's failure to override our rules on conflicts of law and under the longstanding conflicts-of-law principle of lex fori, the law of Alabama supplies the procedural law, including the statute of limitations, to determine the outcome of the inquiry called for by the proviso as to whether Tony Henderson could have commenced a personal-injury action for the injuries that allegedly caused his death had he not died. As explained above, pursuant to the proviso and the conflicts-of-law rule under which it operates, any claim Tony Henderson could have brought was barred by the procedural laws of this State. See Tyson. Accordingly, Sheila Henderson has not satisfied the proviso of § 6-5-410, and CSX and MeadWestvaco have shown that there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law. Although the trial court rejected this defense, we can affirm its judgment on an alternative ground. See Steele v. Walser, 880 So.2d 1123 (Ala.2003), noting the rule that an appellate court, based on an alternative argument asserted by the appellee, may affirm a judgment on an issue previously rejected by the trial court.
Because we resolve this appeal on the basis of the statute of limitations applicable to determine compliance with the proviso of § 6-5-410, we need not address the issues the parties raise regarding the rule of repose[10] or any duty owed by CSX.

*635 IV. Conclusion

Based on the foregoing, we affirm the summary judgment for CSX and Mead-Westvaco.
1070522AFFIRMED.
1070497AFFIRMED.
1070509AFFIRMED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Justice (concurring in the result).
I concur in the result reached by the main opinion. I conclude that there was no duty on the part of the predecessor of CSX to train or warn the decedent with respect to injury or harm allegedly associated with unloading materials from the predecessor's railcars. Nor has Henderson demonstrated that MeadWestvaco, through its corporate predecessor, bears legal responsibility for the alleged acts and omissions of the decedent's former employer. As to the issue of the statute of limitations, MeadWestvaco notes in its brief that in Griffin v. Unocal Corp., 990 So.2d 291 (Ala.2008), this Court held that the "manifest, present injury" standard recognized in that case is to be accorded prospective operation only, except with respect to the Griffin case itself; Henderson does not argue in this appeal that we should revisit that holding.
NOTES
[1] Although CSX and MeadWestvaco prevailed below, they assert in their cross-appeals alternative bases for affirming the summary judgment. The cross-appeals are not necessary to achieve the review sought therein. See McMillan, Ltd. v. Warrior Drilling & Eng'g Co., 512 So.2d 14, 25 (Ala.1986) (quoting with approval 9 J. Moore and B. Ward, Moore's Federal Practice ¶ 204.11[2] (2d ed.1985): "`[A]n appellee, though he files no cross-appeal or cross-petition, may offer in support of his judgment any argument that is supported by the record, whether it was ignored by the court below or flatly rejected.'").
[2] The Hendersons alleged that the predecessor to Bill Vann Company, Inc., Young & Vann Supply Company, sold products and equipment to CAPCO.
[3] Except for CSX and Bill Vann Company, Inc., none of the defendants in the Georgia action was named in the action in the St. Clair Circuit Court.
[4] The evidence showed that Seaboard Coastline, a predecessor of CSX, actually delivered the asbestos to CAPCO. However, the issue whether CSX is a proper party and may be held liable for the actions or omissions of its predecessor, Seaboard Coastline, has not been raised as an issue in this action, either before the trial court or on appeal.
[5] The issue whether MeadWestvaco is a proper party and may be held liable for the actions or omissions of its predecessors has not been raised as an issue in this action, either before the trial court or on appeal.
[6] There is some confusion regarding the date the trial court's July 3, 2007, order was made final. Ultimately, the order was certified as final under Rule 54(b), Ala. R. Civ. P., and Henderson was granted, pursuant to Rule 77(d), Ala. R. Civ. P., an additional 30 days to appeal from the date the order became final. Whether the time within which Henderson filed her notice of appeal is calculated from the date of the Rule 54(b) certification or, pursuant to Rule 77(d), from the trial court's entry of summary judgment as to the last defendant, it is apparent that her notice of appeal was timely.
[7] We note that in Tennessee Coal, Iron & R.R. v. George, 233 U.S. 354, 34 S.Ct. 587, 58 L.Ed. 997 (1914), the United States Supreme Court held that, despite the restrictive language of § 6-5-410 requiring that the action be asserted in Alabama and "not elsewhere," wrongful-death actions under § 6-5-410 may be asserted in other jurisdictions so long as the jurisdictional and procedural requirements of that jurisdiction are satisfied.
[8] In Riddle, pursuant to Van Dusen and Klaxon, supra, the United States District Court for the Western District of Virginia, in a situation similar to that in Pace, applied the conflicts-of-law principles of the transferor forum to the decedent's existing personal-injury claim. 764 F.Supp. at 421. Under those principles, the statute of limitations of the transferor forum applied to the personal-injury claim. Id.
[9] We note that in Griffin v. Hunt Refining Co., 292 Ga.App. 451, 453, 664 S.E.2d 823, 826 (2008), the personal representative commenced a wrongful-death action and the Georgia appellate court concluded that Alabama's two-year statute of limitations for wrongful death, rather than the longer Georgia statute of limitations applicable to a personal-injury action, applied to the hypothetical personal-injury action described in the proviso as a matter of Alabama substantive law. Of course, it is axiomatic that the Georgia court's appreciation of the import of an act of the Alabama legislature is not binding precedent in this State. Moreover, for all that appears, the effect of Pace, with its recognition of the applicability of procedural rules to determine the timeliness of the action referred to in the proviso, was not argued, as the court in Griffin does not mention Pace. Of course, whether Georgia's rule of repose would have operated as a separate and independent basis to bar proceedings by Sheila Henderson in Georgia is an issue beyond the province of this discussion.
[10] We note that Henderson asserts a violation of § 13 of the Alabama Constitution of 1901 in the context of the availability of a rule of repose under the facts of this case. No such argument is advanced with respect to the availability of the statute of limitations as a defense to Henderson's claim as was held in Tyson, nor does Henderson ask us to overrule Tyson.